BECTON, DICKINSON AND COMPANY *vs.*
DEPARTMENT OF REVENUE.

Suffolk.   March 5, 1981. — June 26, 1981.

Present: HENNESSEY, C.J., BRAUCHER, WILKINS, LIACOS, & NOLAN, JJ.

*Taxation,* Corporate excise.   *Constitutional Law,* Taxation, Interstate
commerce.   *Due Process of Law,* Taxation.

In a proceeding before the Appellate Tax Board on a foreign corpora-
tion's application for abatement of its foreign corporation excise tax,
evidence that one of the corporation's divisions, operating in Massa-
chusetts, was one of several corporate acquisitions which had been in-
tegrated into the corporation's managerial structure in a program of
expansion and diversification, that the division made use of financing
arranged by the corporation, that depreciation of the division's prop-
erty and any loss shown by the division was entered into the corpora-
tion's computation of Federal taxes, and that the corporation publicly
held itself out as having control of the division and had the potentiality
for control warranted the board's finding that the corporation was en-
gaged in a unitary business so that its Massachusetts income should be
determined by the formula prescribed by G. L. c. 63, § 38, rather
than by a different method under c. 63, § 42. [788-709]

There was no violation of Federal or State constitutional requirements,
nor any abuse of discretion by the Commissioner of Revenue, in the
determination as to the amount of a foreign corporation's Massachu-
setts income for excise tax purposes where the corporation failed to
show by clear and cogent evidence that the income attributed to Mas-
sachusetts was out of all proportion to the corporation's business trans-
acted within the Commonwealth or that the apportionment made
under G. L. c. 63, § 38, led to a grossly distorted result. [790]

APPEAL from a decision of the Appellate Tax Board.

*Jerome Preston, Jr. (Martha B. Sosman* with him) for the
taxpayer.

*Mitchell J. Sikora, Jr.,* Assistant Attorney General, for
Department of Revenue.

BRAUCHER, J.   The taxpayer, Becton, Dickinson and
Company, is a New Jersey corporation engaged in multi-

state operations. The Appellate Tax Board (board) dismissed for lack of jurisdiction the taxpayer's application for abatement of the foreign corporation excise tax for its fiscal year ending September 30, 1968, and we reversed that decision. *Becton, Dickinson & Co.* v. *State Tax Comm'n*, 374 Mass. 230 (1978). The board then decided against the taxpayer on the merits of its claim that its Massachusetts tax liability was attributable solely to the activities of its Electrodyne division and that Electrodyne was so autonomous that its income should be determined on the basis of a "separate accounting" method. The board concluded that the taxpayer was engaged in a "unitary business," that its Massachusetts income should be determined by the statutory formula prescribed by G. L. c. 63, § 38, and that it had not sustained its burden of proof that it was entitled to use a different method under G. L. c. 63, § 42. We affirm the decision of the board.

We summarize the facts, which are largely undisputed. The taxpayer is a manufacturer of disposable medical items. In 1965 it acquired Electrodyne Company, Inc., a Massachusetts corporation which manufactured pacemakers and defibrillators for use with heart patients and patient monitoring devices for use in hospital intensive care units. Electrodyne operated as a wholly-owned subsidiary until June 30, 1967, when it was dissolved and merged into the taxpayer and continued to operate as the B-D Electrodyne division. Both as a subsidiary and as a division Electrodyne conducted its activities in a very largely independent manner, and the taxpayer did not directly supervise most of Electrodyne's day-to-day operations. The taxpayer was organized into two operational groups: medical, industrial and consumer in one, and laboratory, electronics and science in the other. The Electronics Division supervised Electrodyne and three other operations. Electrodyne was required to file monthly financial reports with the New Jersey office of the taxpayer, and was subject to periodic visits at four to six week intervals from senior management. All financing was arranged for the taxpayer as a whole, and

Electrodyne was the beneficiary of a substantial "loan" from the taxpayer.

The department asserted some thirty-two facts or characteristics to show that the taxpayer was engaged in a unitary business, and the board found that these items were substantially correct, though contrary to some of the testimony of the taxpayer's witnesses. The board did not accept all such testimony at face value, but made liberal use of the taxpayer's 1968 annual report. The taxpayer objects that the annual report "is a public relations document," that a highly diversified, multiform corporation will always look integrated in its annual report, and that material from the report cannot take precedence over direct testimony of individuals who were intimately familiar with the actual functioning. The individuals who testified were the taxpayer's assistant treasurer and the controller of Electrodyne.

The three-factor statutory formula resulted in a determination that the taxpayer's Massachusetts income for fiscal year 1968 was about $500,000, approximately 2.6% of its total income of nearly $20,000,000. The taxpayer's "separate accounting" method showed a loss of more than $1,000,000 for Electrodyne.

The parties are in substantial agreement as to the principles to be applied, except on the question whether Electrodyne was part of a "unitary business." The due process clause of the Fourteenth Amendment imposes two requirements for State taxation of income generated by interstate activities: a minimal connection or nexus between the interstate activities and the taxing State, and a rational relationship between the income attributed to the State and the intrastate values of the enterprise. *Exxon Corp.* v. *Department of Revenue of Wis.*, 447 U.S. 207, 219-220 (1980), and cases cited. *W.R. Grace & Co.* v. *Commissioner of Revenue,* 378 Mass. 577, 584-586 (1979). *Dow Chem. Co.* v. *Commissioner of Revenue,* 378 Mass. 254, 259 (1979). The "linchpin of apportionability" is the "unitary-business principle." *Mobil Oil Corp.* v. *Commissioner of Taxes of Vt.,* 445 U.S. 425, 439 (1980). If a company is a unitary

business, then a State may apply an apportionment formula to the taxpayer's total income in order to obtain a rough approximation of the corporate income that is reasonably related to the activities conducted within the taxing State. We have upheld apportionment under G. L. c. 63, § 38, in such cases, unless the taxpayer "bears the burden of showing by clear and cogent evidence" that apportionment "resulted in extraterritorial values being taxed." *W.R. Grace & Co. v. Commissioner of Revenue, supra* at 586.

We view the board's conclusion that Electrodyne was part of the taxpayer's unitary business as a determination combining findings of fact and conclusions of law, and we consider the implicit conclusions of law within the full scope of review appropriate thereto. *Id.* at 581. In the *Grace* case we suggested that such a determination, for a number of business operations having common ownership, depends on whether they are of mutual benefit to one another and on whether each operation is dependent on or contributory to others. *Id.* at 585-586. See Dexter, The Unitary Concept in State Income Taxation of Multistate-Multinational Businesses, 10 Urb. Law. 181, 192-204 (1978); Hellerstein, State Income Taxation of Multijurisdictional Corporations, 79 Mich. L. Rev. 113, 148-151 (1980). It seems clear enough from the taxpayer's 1968 annual report that Electrodyne was one of several corporate acquisitions integrated into the taxpayer's managerial structure "by the logic of the market place" in a program of expansion and diversification. We do not accept the taxpayer's argument that the board was required to believe the testimony of company witnesses in preference to the published report. It also seems clear that Electrodyne made use of financing by the taxpayer to move its operations to a new plant. Depreciation of Electrodyne property and any loss shown by Electrodyne entered into the taxpayer's computation of Federal taxes, reducing the amount paid. Neither close functional integration nor actual exercise of operational control was essential to unitariness; as in the *Grace* case, the taxpayer publicly held itself out as having control, and it had the potentiality for control. *Id.* at 587. We hold that the

board was warranted in concluding that Electrodyne was part of the taxpayer's unitary business.

It follows that there was no violation of Federal or State constitutional requirements, unless the taxpayer showed by clear and cogent evidence that the income attributed to the Commonwealth was out of all proportion to the business transacted here, or that the apportionment led to a grossly distorted result. *Id.* at 587-590. Apart from constitutional requirements, under G. L. c. 63, § 42,[1] if in the judgment of the Commissioner of Revenue "the allocation and apportionment provisions" of c. 63 were "not reasonably adapted to approximate the corporation's net income derived from business carried on within this commonwealth," he was to determine that net income "by reasonable methods." Perhaps the Commissioner might have determined that Electrodyne continued to be sufficiently independent to justify separate accounting for its income. But he did not. To show an abuse of discretion by the Commissioner, the taxpayer must bear the same burden of proof as on the constitutional issues. *Id.* at 590-591. This it has not done.

The statutory formula produced an apportionment of about $500,000 as Massachusetts income for 1968, about 2.6% of total income. As a separate corporation, Electrodyne had reported Massachusetts income of more than $400,000 for 1966 and more than $300,000 for 1967. The taxpayer supplied no explanation of what disasters produced the claimed loss of more than $1,000,000 for 1968. An income statement supplied to the taxpayer shows Electrodyne sales comparable to those of the prior year, but major increases in "Standard Cost of Sales," selling expense, research and development, and "General Corporate Expense." Any inferences from the income statement would be sheer speculation. Cf. *Butler Bros.* v. *McColgan,* 315 U.S. 501, 507-508 (1942).

Accordingly, the decision of the board is affirmed.

*So ordered.*

---

[1] As amended through St. 1966, c. 698, § 64.