469 A.2d 915

SUPERVISOR OF ASSESSMENTS OF BALTIMORE COUNTY

v.

Robert SLOAN, III, et ux.

No. 487, Sept. Term, 1983.

Court of Special Appeals of Maryland.

Jan. 12, 1984.

Kaye Brooks Bushel, Asst. Atty. Gen., with whom were Stephen H. Sachs, Atty. Gen., of Maryland, and T. Scott Basik, Asst. Atty. Gen., on brief, for appellant.

Robert Sloan, III, Baltimore, with whom were Clapp, Somerville, Honemann & Beach, Baltimore, on brief, for appellees.

Argued before WEANT, ALPERT and BELL, J.

BELL, Judge.

The taxpayers appealed the 1981–82 assessment of their home and adjacent parcel by the Supervisor of Assessments of Baltimore County to the Property Tax Assessment Appeal Board (PTAAB). The Board affirmed as did the Maryland Tax Court. The taxpayers next appealed to the Circuit Court for Baltimore County, where the decision was reversed. The Supervisor noted an appeal to this Court.

## QUESTION

■ The issue is whether two parcels of subdivided land owned by taxpayers are to be assessed as one homestead property where one lot is used as the residence and the second is used for family recreation.

Our answer is they should not.

## FACTS

The taxpayers own two adjacent subdivided lots numbered 7 and 8 in the Foxhill Farms subdivision in the Monkton area of Baltimore County.

· Lot 7 is a one acre parcel improved by taxpayers' residence. Taxpayers purchased the house and land in 1974 for $63,000. This land was assessed by the Supervisor for the 1981–82 taxable year at $20,000. This valuation was supported by comparable sales and is not disputed by the taxpayers.

Lot 8 is a separate subdivided lot of 1.125 acres. Taxpayers acquired this lot in 1977 for $11,000. It is used for a vineyard, garden, and recreation. It is a buildable lot and could be sold for a separate homesite. This land was assessed by the Supervisor for the 1981–82 taxable year at $16,870. The value was also admittedly supported by comparable sales. Lot 8 was valued at less than Lot 7 because it was unimproved.

One other property in the immediate area comprised of two separate subdivision lots is assessed in the same manner as Sloans' lots. Two other properties in the immediate area are of similar size as Sloans' two properties, but are not subdivided. Those two lots are oblong lots with substantially less road frontage. These two properties were assessed as one homestead property.

## LAW

The standard for review by the circuit court is controlled by Annotated Code of Maryland, Article 81 § 229(*o*) which provides as follows:

> In any case, the circuit court for the county shall determine the matter upon the record made in Maryland Tax Court. The circuit court shall affirm the Tax Court order if it is not erroneous as a matter of law and if it is supported by substantial evidence appearing in the record. In other cases, the circuit court may affirm, reverse, remand or modify the order appealed from.

The circuit court held that the tax court erred as a matter of law. It is clear that there was substantial evidence to support the decision of the tax court. The sole issue on appeal before the tax court was valuation of Lot 8 as a separate lot. The taxpayers do not dispute that the valuation of Lot 8 was fully supported by comparable sales. Taxpayers' contend that as a matter of law Lot 8 must be assessed as a portion of the homestead and not as a separate buildable lot.

The relevant portions of the Annotated Code of Maryland applicable to the tax year 1981–82 were as follows:

Article 81

Section 14(a)(2) (1980 Repl.Vol.)

The following shall be separately subclassified purposes of real property assessment:

(i) Land actively devoted to farm or agriculture use.

(ii) Woodland

(iii) Country clubs subject to agreements with the State Department of Assessments and Taxation.

(iv) Planned development lands.

(v) Homesteads.

Section 14(b)(1) (1980 Repl.Vol.)

(b) *Valuation.*—Except as hereinafter provided:

(1)(i) All real property required by this article to be assessed shall be valued at its full cash value on the date of finality. Except for the real property described in § 14(b)(2) of this article, the Department shall adjust the full cash value of all real property subject to valuation and assessment for purposes of taxation by the State, counties and Baltimore City, municipal corporations, and special taxing district under the provisions of this paragraph (1) by making the calculations required by this paragraph (1).

(ii) As used in this paragraph (1), the following terms have the meanings indicated:

1. Full cash value means current value; Section 14A (1980 Repl.Vol.)

(a) As used in this section, and as used in § 14, the term 'homestead' means a single family or two-family owner-occupied residential dwelling. The term includes the dwelling, the land upon which the dwelling is situated, and other land and other improvements that are used primarily as accessories to the dwelling and not for independent commercial purposes. If the property is used as a single family owner-occupied residential dwelling, but a resident of it derives income from the property, the Department of Assessments and Taxation shall apportion the total property assessment between that portion of the property used for residential purposes and that portion of the property used for independent commercial purposes.

(b) The State Department of Assessments and Taxation may promulgate rules and regulations for the interpretation and implementation of this section as it deems necessary.

Code of Maryland Regulations, 18.02.02.03

.03 Subdivided Land—Bulk Ownership of Lots.

The valuation of subdivided land should consider each lot as a single legal entity regardless of ownership.

In 1978, the General Assembly enacted a statute which provided that "[t]here is a special allowance equal to 5 percent of the current value of the homestead property in recognition of the unprecedented increase in the value of homestead property due to inflation." Art. 81, § 14(b)(1)(iii) (1978 Cum.Supp.). A subclassification of homestead property was created, § 14(a)(2)(v); and, Section 14A was enacted to define "homesteads" for the purpose of determining what property qualified for that additional 5 percent inflation allowance. In 1979, the General Assembly enacted the triennial assessment law which required that all real property be assessed at the same percentage of current value, with certain exceptions not relevant here, Article 81 § 14(b) (1980 Repl.Vol.). That statute which had granted an additional 5

percent inflation allowance to homestead property, (Art. 81, § 14(b)(1)(iii) (1978 Cum.Supp.) was repealed.

This Court said in *Montgomery County v. Lindsay,* 50 Md.App. 675, 440 A.2d 411 (1982) at page 678, 440 A.2d 411:

> The issue here presented is a question of statutory interpretation. The cardinal rule of statutory construction is to ascertain and effectuate the actual intent of the Legislature.
>
> The Court of Appeals and this Court have enunciated several tests for determining legislative intent. The intention of the legislature must be sought in the first instance in the words of the statute. Second, the court should consider the object or purpose to be obtained by the statutes in question, and the courts should construe the law so as to carry out, effectuate or aid in its general purposes and policies. Third, where a law such as the employees retirement system law has various parts, provision should be made, where possible, to give effect to all of its parts. Fourth, it is well settled that specific terms covering a given subject matter prevail over general language of the same or another statute which might otherwise prove controlling.
>
> Fifth, the court may not disregard the natural import of the statutory language unless some imperative reason is found in the statute for enlarging or restricting its meaning. Finally, where statutory language is plain and free from ambiguity, and expresses a definite and sensible meaning, courts are not at liberty to insert or delete words with a view toward making the statute express an intention which is different from its plain meaning. (Citations omitted)

Section 14A, which defines homestead, is subject to two different interpretations. One interpretation would require the properties be assessed together; the other would require they be assessed separately. Since the words of the statute are not controlling in and of themselves, we must look next to the purpose or subject of the statute.

The title to the 1978 Amendment which provided for the new classification and definition of homestead in 14A stated as follows:

For the purpose of separately subclassifying real property for assessment purposes; defining homestead property; providing for an additional, special allowance of 5 percent of current value to be used in calculating the full cash value of homestead property for purposes of assessment; providing that certain taxpayers may file a late claim for certain excess taxes paid; specifying the inflation allowance for all real property; authorizing the State Department of Assessments and Taxation to amend the constant yield tax rate, on or before a certain date, for the taxable year beginning July 1, 1978; exempting the taxing authority from certain procedural requirements to be followed for the taxable year beginning July 1, 1978 in order to increase the local tax rate; providing certain exceptions; providing for the administration of this Act; repealing obsolete language; and providing that this Act is an emergency measure.

The purpose which is relevant to these taxpayers was to make a special allowance for owner occupied residences.

In looking to the intent of the General Assembly we must also consider its intent in 1979 when it repealed their Article 81 § 14(b)(1)(iii) (1978 Cum.Supp.), which had provided the assessment preference. The title to that act provided:

For the purpose of providing that the full cash value of certain real property required to be taxed by local governments shall be adjusted annually by specified calculations; providing for definitions for and the manner of calculating these adjustments; repealing provisions requiring adjustment of the full cash value of certain real property by an inflation allowance; changing the annual valuation of real properties to a 3-year period of assessment review and providing for the manner of assessing real property during a 3-year cycle; specifying the requirements for assessment notices; changing the time for determining

and amending the constant yield tax rate and the calculations to determine the rate; correcting certain provisions of the assessment laws; and relating to the assessment and valuation of properties subject to real property taxation.

The clear purpose of the 1979 General Assembly was to remove the assessment advantage granted in 1978, and to provide for a new method of assessment.

The Court of Appeals in *Schweitzer v. Brewer,* 280 Md. 430, 374 A.2d 347 (1977) in interpreting the Maryland Motor Vehicle Law, at pages 438 and 439, 374 A.2d 347 held:

When the [legislative] intent is expressed in clear and unambiguous language, this Court will carry it out, if no constitutional guarantees are impaired. Words are granted their ordinary signification so as to construe the statute according to the natural import of the language used without resorting to subtle or forced interpretations for the purpose of extending or limiting its operation. If reasonably possible the parts of a statute are to be reconciled and harmonized, the intention as to any one part being found by reading all the parts together, and none of its words, clauses, phrases, or sentences shall be rendered surplusage or meaningless. Results that are unreasonable, illogical or inconsistent with common sense should be avoided whenever possible consistent with the statutory language. In other words, an interpretation should be given to statutory language which will not lead to absurd consequences.

Current value then becomes the test in making the assessment and not whether a lot is a part of the homestead. The definition of homestead does not specifically include subdivided land. The only reading of the definition which is consistent with the intent to assess all property at current value is that it does not include subdivided buildable lots. This likewise is consistent with the basic rules of statutory

construction. That portion of the definition which deals with commercial purposes remains unaffected.

■ The taxpayers have conceded that the Supervisor valued lots 7 and 8 at fair market value, but maintain that the lots were overvalued in comparison to those of their neighbors. This argument has been uniformly rejected. It is well established in Maryland that a taxpayer whose property is valued higher than that of even comparable neighbors is entitled to no relief unless his property is valued at more than its fair market value. *Samet v. Supervisor of Assessments,* 290 Md. 357, 430 A.2d 73 (1981).

■ Actually, the taxpayers have not been treated inequitably. They argue that the assessed combined valuation of Lot 7 and 8 (2.125 acres) is more than that of most 2 acre unsubdivided lots of their subdivision. But, the Sloans could sell their two lots separately while other property owners could only sell their two-acre parcels as one lot. The accessory acreage on these lots is rear acreage that is not buildable. Sloans did not show that the other two-acre lots had a vacant acre or could be subdivided even if there was a vacant acre. In contrast, lots 7 and 8 both have significant road frontage, which, in combination with their subdivision, renders each lot an ideal homesite. The Sloans' lots are in no way comparable to unsubdivided two-acre properties in the subdivision. There was substantial evidence to support that finding.

Taxpayers' properties were treated exactly as other similarly situated properties in the subdivision. The property of the other person owning two adjacent subdivided parcels in the subdivision was valued in precisely the same manner as the taxpayers' property.

JUDGMENT REVERSED AND REMANDED WITH INSTRUCTIONS TO THE CIRCUIT COURT FOR BALTIMORE COUNTY TO AFFIRM THE DECREE OF THE MARYLAND TAX COURT IN THIS MATTER. COSTS TO BE PAID BY APPELLEES.