475 A.2d 1224
**CHESAPEAKE INDUSTRIES, INC., et al.**

v.

**COMPTROLLER OF THE TREASURY.**

No. 1155, Sept. Term, 1983.

Court of Special Appeals of Maryland.

June 7, 1984.

E. Stephen Derby and Karen L. Myers Zauner, Baltimore, with whom were Piper & Marbury, Baltimore, on the brief, for appellants.

Gerald Langbaum, Asst. Atty. Gen., with whom were Stephen H. Sachs, Atty. Gen. and John K. Barry, Asst. Atty. Gen., on the brief, for appellee.

Argued before ADKINS, ALPERT and GETTY, JJ.

ADKINS, Judge.

In Art. 81, § 316(c), the Annotated Code of Maryland prescribes a formula method by which an appropriate share of the income of a unitary multi-state operation doing business both within and without this state is allocated to Maryland. The case now before us requires us to decide the proper beginning point for application of that formula: is it (1) the combined or consolidated taxable income of a parent corporation and its wholly owned subsidiaries or (2) the taxable income of the parent, with respect to its return, and the taxable income of the Maryland subsidiary, with respect to its return? In the instant case, if method (1) is used, appellant Chesapeake Industries, Inc. (parent) is entitled to refunds for tax years 1973, 1974, and 1975 totalling $18,783.16 in principal amount. Appellant Southern Door, Inc., (subsidiary) is entitled to refunds for 1972, 1973, and 1974 totalling $36,295.00. If method (2) is applied, Chesapeake is entitled to refunds for 1974 and 1975 totalling $1,454.16, but Southern Door owes additional taxes for 1974 and 1975 aggregating $43,524.00.

## The Issue

Although the case *sub judice* is somewhat beclouded by semantic disputes as to the differences between what the Comptroller terms "consolidated returns", what appellants prefer to call "unitary returns" and what others designate "combined reporting", it is hard to quarrel with the statement that "[i]n the area of state taxation, the most controversial issue today is the validity and propriety of combined reporting." J. Buresh and M. Weinstein, *Combined Reporting: The Approach and Its Problems*, 1 Jnl. of State Taxation 5 (1982). The precise scope of this issue in Mary-

land has been stated succinctly by E. Derby in his chapter on "Maryland Corporate Income Tax", *Maryland Taxes* 41–1 to 4–36 (MICPEL 1981). At page 4–14, Mr. Derby observes:

> In Maryland the issue of whether a parent corporation and its subsidiaries are permitted, or can be required, to file together a consolidated return as a unitary business has not been finally determined. By statute each corporation, even if affiliated with another corporation, must file a separate income tax return. Separate returns are required even by members of an affiliated group filing consolidated federal returns. The unresolved issue is whether the statutory requirement that each corporation must file a separate return precludes a unitary business operated through separate corporate entities from calculating the tax due from each corporate entity by a unitary apportionment method using as a base the consolidated income of the unitary corporate group [footnotes omitted].

It is that "unresolved issue" that we must decide in this case.

### Facts

During the tax years 1972 through 1975, Chesapeake was a parent corporation with a number of subsidiaries operating in a number of states. The subsidiaries were engaged chiefly in the manufacture of doors and related products. Chesapeake's business was the management of its manufacturing subsidiaries. One of these subsidiaries, Southern Door, was, like the parent Chesapeake, located in Maryland. All parties agree that the operation was a unitary business. *See Xerox Corporation v. Comptroller*, 290 Md. 126, 428 A.2d 1208, 1209 (1981).

For the tax years in question, Chesapeake and Southern Door each initially filed Maryland income tax returns showing the separate taxable income of each corporate entity. Later, each corporation filed amended returns. On all of

the latter returns, the taxable income was stated as "Taxable Income [of] Chesapeake Industries, Inc., and Subsidiaries Consolidated." The effect of this approach was to state the combined or consolidated income of Chesapeake and *all* its subsidiaries—all but two of which corporations did no business in Maryland and were not taxed by Maryland—as the taxable income for both Chesapeake and Southern Door. The result was that both Chesapeake and Southern Door reported on line 1 of their respective Maryland returns identical losses for each year. As a consequence, after application of the § 316(c) formula, the refunds we have noted (under method (1) above) were generated.

The Comptroller took the position that the amended returns were consolidated returns and as such not allowed by Maryland law. Chesapeake and Southern Door appealed to the Tax Court, which agreed with the Comptroller, as did the Circuit Court for Baltimore City when the matter reached it. We, too, sustain the Comptroller's view and affirm.

### Discussion

Article 81, § 295 must be the starting point of our discussion. In pertinent part it provides:

> Every corporation ... (domestic and foreign) having any income allocable to this State under the provisions of § 316 hereof ... shall file a return stating specifically the items of gross income and items claimed as deductions allowed by this subtitle. Corporations ... which are affiliated shall each file separate returns.

■ It is this language that precludes a corporation from filing a consolidated return in Maryland. "In the case of a consolidated return the separate entities of the various member corporations are, in a sense, disregarded; the consolidated income of the entire group is reported on a single return; and a single tax is paid on the total income shown on such return." E. Rudolph, *State Taxation of Interstate*

*Business: The Unitary Business Concept and Affiliated Corporate Groups,* 25 Tax L.Rev. 171, 197 (1969–70). *See also* D. Kahn, *Basic Corporate Taxation,* § 12.11 (3d ed. 1981). Section 295 does not permit this approach because it requires "[c]orporations and associations which are affiliated [to] . . . file separate returns." This construction of the statute was noted by the Court of Appeals in *Comptroller v. Atlantic Supply Co.,* 294 Md. 213, 219–20, 448 A.2d 955 (1982). It also has been recognized by the General Assembly.

Joint Resolution 19 (HJR No. 34) of 1980 requested "the Legislative Policy Committee . . . to ask the appropriate committee to study and decide whether a system of consolidated corporate income tax returns should be adopted for use by Maryland taxpayers and, if so, to determine which method of consolidation should be used. . . ." The Legislative Policy Committee referred the matter to the Senate Budget and Taxation Committee and the House Ways and Means Committee. They reported that "[p]resently, Maryland Corporate Income Tax Law . . . does not permit State consolidated corporate income tax returns. . . ." *Reports of Legislative Committees to 1981 General Assembly, 1980 Interim, Fiscal Committees* at 43 (Budget and Taxation) and 463 (Ways and Means). They recommended against the adoption of the consolidated return approach. *Id.* at 45 and 467. Despite these adverse recommendations a bill to permit consolidated returns was introduced at the 1984 session of the General Assembly. This bill, HB 1384, died in the Ways and Means Committee.

In light of this judicial and legislative history, the parties do not disagree that consolidated corporate income tax returns are prohibited in Maryland. Their dispute involves whether the amended returns filed by Chesapeake Industries and Southern Door fall within the scope of that prohibition.

Appellants argue that those returns gratified the provisions of § 295 in that each corporation filed a separate

return for each year in question. That line 1 of each of these returns was identical is permitted, they say, because this method does not produce consolidated returns but rather is a "unitary apportionment method" required to apportion taxable income to Maryland pursuant to § 316(c). The "unitary apportionment method", more commonly referred to as "combined reporting", is not identical to the consolidated return approach, although the Court of Appeals seems to have treated them as equivalent in *Atlantic Supply Co., supra*, 294 Md. at 220, n. 2, 448 A.2d 955. As Buresh and Weinstein observe:

> In a combined report ... the combined income of the affiliated group is not computed for the purpose of taxing such income, but rather as a basis for determining the portion of income from the entire unitary business attributable to sources within the state which is derived by members of the group subject to the state's jurisdiction. It is viewed as something closer to an information return than a combined tax return.

1 Jnl. of State Taxation, *supra*, at 7.

> According to appellants, this combined or

> unitary method of apportionment is a fair and reasonable method by which to calculate the amount of the taxable income of each Appellant allocable to Maryland. It has the important advantage of recognizing substance over form where an integrated business, such as Appellants, is operated as a number of separate corporations rather than as a single multistate corporation.

They cite a number of cases from foreign jurisdictions in support of this argument. The fountainhead of this line of cases is *Edison California Stores, Inc. v. McColgan*, 30 Cal.2d 472, 183 P.2d 16 (1947).

The California law considered in *Edison*, like Maryland law (Art. 81, § 316(c)) provided that for a multistate business, California taxable income should be determined by a three-factor formula. Unlike Maryland law (§ 295), Califor-

nia could require consolidated returns. But the ability of the California taxing authorities to do this was not decisive:

Power to apply the formula allocation in this or in the Butler Brothers case is not derived from the authority to require the filing of consolidated returns, since the latter indicates that the income of the groups will be taxed as a unit. The power flows from the authorized method of ascertaining the income attributable to a taxpayer's activities within the state; and by a parity of reasoning the authority to pursue the method is present whenever activities are partially within and partially without the state ... as in the case of a unitary system, whether the integral parts of the system are or are not separately incorporated; or ... the accounting system of the taxpayer does not clearly reflect the income, which may be the case when it is part of a unitary system. The legislature by enacting the foregoing sections, and the courts in the Butler Brothers decisions, [*Butler Brothers v. McColgan,* 17 Cal.2d 664, 111 P.2d 334 (1941), *aff'd.,* 315 U.S. 501, 62 S.Ct. 701, 86 L.Ed. 991 (1942)] recognized that the separate accounting method is appropriate to determine the true income of a separate business; but that when the business is not separate, and is an integral part of a larger and unitary system, the separate accounting is inadequate and unsatisfactory in ascertaining the true result of the activities and values attributable to that business. If the operation of the portion of the business done within the state is dependent upon or contributes to the operation of the business without the state, the operations are unitary; otherwise, if there is no such dependency, the business within the state may be considered to be separate. Within that test it may not properly be contended that the taxpayer in the present case is doing a separate business.

The ascertainment of income by the apportionment method is not necessarily a disregard of the corporate entity nor an extension of the provisions of the statute by implication. Formula allocation is merely a method of

ascertaining the true income attributable to the plaintiff's business, and is a method of ascertainment authorized by the statute. 183 P.2d at 21–22.

In substantial reliance on *Edison,* similar decisions were reached in *Joslin Dry Goods Co. v. Dolan,* 200 Colo. 291, 615 P.2d 16 (1980); *Caterpillar Tractor Co. v. Lenckos,* 84 Ill.2d 102, 49 Ill.Dec. 329, 417 N.E.2d 1343 (1981), *app. dis. sub. nom. Chicago Bridge and Iron Co. v. Caterpillar Tractor Co.,* — U.S. —, 103 S.Ct. 3562, 77 L.Ed.2d 1402 (1983); *Montana Dept. of Revenue v. American Smelting and Refining Co.,* 173 Mont. 316, 567 P.2d 901 (1977), *app. dis.* 434 U.S. 1042, 98 S.Ct. 884, 54 L.Ed.2d 793 (1978); and *Coca Cola Co. v. Department of Revenue,* 271 Or. 517, 533 P.2d 788 (1975). *But see Interstate Finance Corp. v. Wisconsin Dept. of Taxation,* 28 Wis. 262, 137 N.W.2d 38 (1965).

All of these decisions supporting appellants' position rest on legislative history different from Maryland's. What is more significant, none of them, with the exception of *Caterpillar Tractor Co.,* involved statutory provisions like our § 295. In each of them, again excepting *Caterpillar,* so far as the reported opinions disclose, there was no express legislative requirement that a parent corporation and its affiliates file separate tax returns. Thus, those cases stand for no more than the proposition that combined (or as appellants would have it, unitary) reporting may be permitted or required by the tax authorities in the absence of such a provision. But *Caterpillar* is a stronger case for appellants. There, Illinois law, like Maryland law, precluded the filing of consolidated returns. The Supreme Court of Illinois found *Edison* persuasive, and as to the problem of consolidated returns opined:

We consider that the appellate court correctly stated that the ban on filing consolidated returns in Illinois was "irrelevant to a determination of whether the unitary method of apportionment is to be used in Illinois." . . . . That Illinois does not permit the filing of consolidated returns does not mean that it therefore prohibits the use

of the unitary apportionment method.... Whether [a group of affiliated corporations] may also qualify as a unitary business group is irrelevant to the determination of whether it may file a consolidated Federal income tax return.

49 Ill.Dec. at 342, 417 N.E.2d at 1355.

The decisions supporting combined reporting in states other than Illinois amount to judicial approbation of the desirability of that approach in the absence of any legislative prohibition of it. In most of the cases, the taxing authority was promoting combined reporting. These cases are not persuasive because they were decided against a different statutory background. The Illinois decision combines approval of the policy of combined reporting with a strained construction of the Illinois statute. We do not think we can so readily disregard the clear intent of the Maryland legislature.

■ It may well be that "[w]hether [a group of affiliated corporations] may also qualify as a unitary business group is irrelevant to the determination of whether it may file a consolidated Federal income tax return." *Id.* 49 Ill.Dec. at 342, 417 N.E.2d at 1355. But it is not irrelevant that Art. 81, § 295, in the plainest language, commands "[c]orporations and associations which are affiliated shall each file separate returns." This wording prohibits not only consolidated returns, but also combined reporting, at least combined reporting as attempted by appellants in this case. Indeed, when the beginning point (the line 1 taxable income) of a Maryland return is identical for each of two affiliated corporations, the difference between a consolidated return and a combined report becomes a difference without a distinction, for in each case the separate corporate entities are wholly disregarded. That is what § 295 does not permit, whether the attempt is made in the guise of a consolidated return or as a combined report. The Court of Appeals so indicated in *Atlantic Supply Co., supra.*

The 1980 legislative committee reports, while noting the difference between consolidated returns and combined reports, *Reports of Legislative Committees to 1981 General Assembly, supra,* at 745–46, did not recommend the adoption of either. House Bill 1384 of 1984, which would have permitted both consolidated returns and combined returns and combined reporting by deleting the sentence of § 295 we have just quoted, did not pass. In short, there is no doubt about legislative intention in Maryland. We hold it precludes what appellants attempted here.

Nor can appellants claim they gratified § 295 since they each filed a physically distinct Maryland income tax return. As we have repeatedly noted, line 1 on each of those amended returns was identical. That does not comply with the § 295 requirement that "[e]very corporation ... (domestic and foreign) having any income allocable to this State under the provisions of § 316 ... shall file a return *stating specifically the items of its* gross income.... [emphasis supplied]. A return that states the income of an affiliated group of corporations is not permitted by § 295.

We append two additional comments to this discussion, before passing on to appellants' final contention. First, we recognize that our reading of § 295 produces, in some cases, a disparate treatment of functionally similar business operations. If Chesapeake Industries operated through unincorporated branches or divisions instead of incorporated subsidiaries (as was the case, *e.g.* in *Comptroller v. Diebold, Inc.,* 279 Md. 401, 369 A.2d 77 (1977) and *Comptroller v. Ramsay, Scarlett & Co., Inc.,* 58 Md.App. 327, 473 A.2d 469 (1984)) it would have been required to do, in effect, what it did in this case. In *Edison, supra,* the California Supreme Court recognized the anomaly:

> ... accepting, as we must, the application of the law to unincorporated wholly controlled branches or businesses located in other jurisdictions as set forth in *Butler Brothers v. McColgan* ..., the conclusion is irresistible that the

same rule should apply to incorporated wholly controlled branches or businesses so located.

183 P.2d at 17.

In light of the Maryland statute, however, that conclusion is not "irresistible" to us.  It may be good policy to treat, for tax purposes, a multistate corporation operating through wholly-owned subsidiaries the same as a multistate corporation operating through unincorporated divisions. But that is a question fundamentally for the legislature absent claims of constitutional problems not raised in this case.  Moreover, it is well known that differences in the structure of a business organization may have different consequences.  There are benefits and drawbacks attached to any such organizational form—the corporation, the partnership, the joint venture and so on.  The consequences of choosing a particular structure may be many, including some that relate to taxes.  That this is so does not permit us to rewrite § 295 to eliminate some of those consequences.

Second, we note that Maryland's prohibition against consolidated returns arguably is inconsistent with its policy of integrating Maryland income tax law with federal income tax law.  *Katzenberg v. Comptroller*, 263 Md. 189, 282 A.2d 465 (1971).  *Comptroller v. Chesapeake Corp. of Virginia*, 54 Md.App. 208, 458 A.2d 459, *cert. den.*, 296 Md. 653 (1983).  Consolidated corporate income tax returns are, of course, permitted by the Internal Revenue Code, § 1501. The inconsistency is, however, superficial.  What Maryland law requires is that Maryland income tax returns reflect, in general, elements of income includible on a federal return. This is made clear by *Katzenberg* and *Chesapeake Corp.* What Maryland law does not require, indeed does not permit, is the use of a Maryland consolidated return by a parent corporation and its subsidiaries.  This is made clear by § 295.  Maryland's statutory preclusion of consolidated returns is easily overcome.  As Mr. Derby points out in MICPEL's *Maryland Taxes, supra,* at 4–15 "[b]ecause Maryland does not permit consolidated returns, if a taxpay-

er has filed a consolidated federal income tax return, it will have to prepare and file a pro forma federal tax return which includes the information used to develop the federal consolidated return."

That procedure clearly gratifies the requirement of § 295. What appellants attempted here did not, as both the Tax Court and the Circuit Court for Baltimore City correctly decided.

■ Although we hold that both the administrative agency and the trial court properly construed § 295, we must address a final argument advanced by appellants. It is that the Comptroller must modify § 316(c)'s three-factor formula to permit them "to utilize the unitary method of apportionment in order to apportion their respective incomes in an equitable manner."

This contention is based on the last sentence of § 316(c) which provides that

> [t]he Comptroller of the Treasury shall have the right, in those cases when circumstances warrant, to alter any of the above rules as to the use of the separate accounting method or the formula method [and] the weight to be given the various factors in the formula. . . .

The language quoted appears to do no more than to give the Comptroller discretion to "alter any of the above rules. . . ." Appellants, however, say this should be construed to impose a duty. They argue that if a public officer is given power to do something, and if "the public interest or individual rights call for [the] exercise [of that power], the language used, though permissive in form, is in fact peremptory." *Board of Supervisors v. United States*, 71 U.S. (4 Wall.) 435, 446–447, 18 L.Ed. 419, 423 (1867). The argument is based on statutory construction, not on a claim of constitutional requirement. *Compare Xerox Corp. v. Comptroller, supra*, 290 Md. at 148, 428 A.2d 1208 (Court of Appeals rejected argument that modification of formula was constitutionally required).

We need not decide the statutory construction issue. Appellants do not seek the alteration of any "rule" set forth in § 316(c). They ask us to hold that the Comptroller must disregard § 295's specific demand that separate corporate entities file separate tax returns. Section 316(c) does not permit, let alone require, the Comptroller to disregard this statutory mandate.

JUDGMENT AFFIRMED. APPELLANTS TO PAY THE COSTS.