503 A.2d 1371

**WARD EUROPA, INC., et al.**

v.

**COMPTROLLER OF the TREASURY.**

**No. 640, Sept. Term, 1985.**

Court of Special Appeals of Maryland.

Feb. 7, 1986.

Keith E. Ronald and W. Lee Thomas (W. Lee Thomas, P.A. on brief), Towson, for appellants.

John K. Barry, Asst. Atty. Gen., Annapolis (Stephen H. Sachs, Atty. Gen., Baltimore, and Gerald Langbaum, Asst. Atty. Gen., Annapolis, on brief), for appellee.

Argued before ADKINS, BLOOM and WENNER, JJ.

BLOOM, Judge.

Ward Europa, Incorporated, a Maryland corporation, and Ward Overseas, Incorporated, a Delaware corporation, appeal from the judgment of the Circuit Court for Baltimore County affirming an order of the Maryland Tax Court upholding income tax deficiency assessments. Both appellants are wholly owned subsidiaries of The Ward Machinery Company, a Maryland corporation in the business of manufacturing and selling machinery and equipment.

For the tax years at issue, each appellant was qualified as a domestic international sales corporation, commonly referred to as a DISC. DISCs were creatures of federal tax law; they existed by virtue of the Internal Revenue Code (IRC) for the sole purpose of affording tax benefits to their

parent corporations, businesses engaged in the export trade.[1] The IRC excused these heteroclite corporations from paying taxes on a certain calculable percentage of their income. Maryland tax legislation, however, makes no provisions for these federal phantasms. When appellants calculated their Maryland taxes, they used formulas created for conventional corporations and concluded that they owed no tax at all. Appellee, the Comptroller of the Treasury, then adjusted the formulas and assessed a deficiency against appellants. Appellants contest the authority of the Comptroller to make such adjustments.

This appeal turns more on the interpretation of relatively clear statutory law than it does on the alchemy of taxation. Concluding that the Comptroller had adequate authority to adjust the apportionment formulas, we shall affirm the judgment below.

## Prefatory Note

The entities involved in this appeal—DISCs—were abolished and replaced with entities called Foreign Sales Corporations (FSCs) through the Tax Reform Act of 1984 (TRA). Although the TRA substantially amended that part of the IRC dealing with DISCs, the amendments did not become effective until January 1, 1985, and therefore do not affect this appeal. It should be noted, however, that this opinion focuses only on DISCs, entities formed under the then-existing sections of the IRC, and may not be applicable to foreign sales corporations.

---

1. One court described DISCs this way:
   In general, a DISC is a tax planning device "whose function is to provide a convenient bookkeeping mechanism for isolating export profits of [a domestic] enterprise." B. Bittker & J. Eustice, *Federal Income Taxation of Corporations and Shareholders* ¶ 17.14 (4th ed. 1979).... The principal function of the DISC is to sell or lease property which has been manufactured by another for ultimate use outside the United States.
   *Lone Star Steel Company v. Dolan,* 642 P.2d 29, 32 (Colo.App.1981), *modified* 668 P.2d 916 (Colo.1983).

## Introduction

DISCs were created by Congress in 1971 to encourage exports and remedy disadvantages suffered by U.S.-based exporting companies. *Westinghouse Electric Corporation v. Tully*, 466 U.S. 388, 389–90, 104 S.Ct. 1856, 1858–59, 80 L.Ed.2d 388 (1984). Until then, domestic corporations received better tax treatment if they had foreign subsidiaries manufacture products destined for foreign markets. *Thomas International Limited v. United States*, 6 Cl.Ct. 414 (1984). Congress sought not only to remedy the inequitable tax treatment received by exporting companies based in this country but also to encourage domestic employment. *See LeCroy Research Systems Corporation v. Commissioner of Internal Revenue*, 751 F.2d 123, 124 (2d Cir.1984); Comment, *Disc: A Tax Primer*, 20 Loy.L.Rev. 325 (1974).

To realize these goals, Congress elected to allow exporting corporations to create subsidiaries which were no more than accounting devices through which the parent corporation could defer tax liability on some of its income. These shell corporations were created as DISCs through the Revenue Act of 1971, codified as 26 U.S.C. §§ 991–997 (1971).

The paper corporations created by their parents had no assets, owned no property, and employed no personnel of their own; their sole activity was receiving money from the parent. *Thomas International Limited v. United States*, 773 F.2d 300, 301 (Fed.Cir.1985). The only purpose of a DISC was to postpone, forever if possible, tax liability on income earned by the parent. The parent corporation essentially credited the DISC with some or all of its export income, using one of two methods. The parent could either sell its goods to the DISC, on paper, and then cause the DISC to sell them to the ultimate foreign purchaser, in which case the subsidiary was a "sales DISC," or the parent could simply pay the DISC a commission out of the proceeds of sales made by the parent, in which case the subsidiary was a "commissions DISC." I.R.C. § 994(b)(1);

Treas.Reg. § 1.993–1(1) (1977). Ward Europa was a sales DISC; Ward Overseas was a commissions DISC.

Each year the DISC was deemed to have distributed a certain percentage of its income, approximately one-half, to its shareholders (almost invariably the parent corporation) as a constructive dividend regardless of whether the dividend was actually paid. The shareholder (parent) then paid taxes on the constructive dividend as it would on any other corporate dividend. The remaining portion of DISC income was called "accumulated DISC income," with taxes thereon being deferred until one of three things happened: one, actual distribution of the income to the shareholder, at which time it became taxable income to the shareholder; two, sale of its stock by the DISC shareholder, at which time the shareholder would pay a tax based upon the amount of funds then remaining in the accumulated DISC income account; or three, loss of DISC qualification by the corporation, at which time all the income would become taxable. Note, *Fine-Tuning the DISC: Evaluation and Framework*, 11 Ga.L.Rev. 902 (1977); B. Bittker and J. Eustice, *Federal Income Taxation of Corporations and Shareholders*, § 17.14 (4th ed. 1979) (hereinafter cited as Bittker and Eustice). For purposes of relating this to Maryland law, it is important to note that although the DISC was exempt from paying taxes on its income by virtue of I.R.C. § 991, the income itself was fully taxable to its shareholders, some as constructive dividends and the remainder upon actual distribution. Bittker and Eustice, *supra*. The DISC structure merely afforded a tax deferral, not an exemption.

The parent corporation was not required to let its income waste away in the DISC, however, for I.R.C. § 993(d) permitted the DISC to lend money to the parent without the loan being construed as a taxable distribution of income, provided the loans were used by the parent only for export activities. *Thomas International*, 773 F.2d at 301–02.

The most obvious problem with DISCs is that they were not traditional corporations. When corporations were first beginning to be recognized by courts, the notion that a non-living entity should have an independent legal existence was seen as the dubious product of overly fertile legal imaginations. The wholly fictitious life afforded a DISC required an even more active imagination. DISCs had absolutely nothing that would signify their existence. They were hollow corporations, mere bookkeeping entries, sponsored by the federal government; they owned, leased or used no property, real or personal, and had no employees. *See Caterpillar Tractor Company v. United States*, 589 F.2d 1040, 1044, 218 Ct.Cl. 517 (1978). It is not surprising that state courts and legislatures were unprepared to deal with them. This case is the inevitable result of the Comptroller's attempts to find a place for DISCs in Maryland's taxation scheme.

*Background*

The tax years at issue in this case are those ending May 31 of 1979, 1980, 1981, and 1982 for Ward Europa. Ward Overseas is concerned with its initial tax year, which ended June 30, 1982. For the years in question, appellants were duly qualified DISCs conducting all of their business out of the offices of their parent in Cockeysville in Baltimore County. This meant that neither Ward Europa nor Ward Overseas employed any personnel or owned any property and that at least 95 percent of their sales (commissions) were made in (or derived from sales to) foreign countries. Income realized by Ward Europa consisted solely of the difference between the price for which it sold goods to the foreign purchaser and the price it paid to its parent for those goods. Ward Overseas's income consisted entirely of commissions paid by the parent out of the proceeds the parent realized from direct sales to foreign purchasers.

This appeal revolves around the determination of how much of the income earned by the two appellants is attributable to Maryland, and hence taxable by Maryland. The

question is controlled by statutes and regulations promulgated under them. The net income of a corporation is defined under Md.Ann.Code art. 81, § 280A(a) (1980), which, during the years in question, read: "The net income of a corporation shall be the taxable income of such taxpayer as defined in the laws of the United States as amended from time to time and for the corresponding taxable period ... except as hereinafter modified." [2] As discussed *supra,* DISC income, while tax-deferred, was not tax exempt under the IRC; it was taxable income and hence eligible for inclusion as the net income of a corporation under § 280A(a).

The crucial statute is Md.Ann.Code art. 81, § 316(c) (1980), which prescribes how a corporation's net income is to be allocated. After discussing income from real estate or tangible personal property in § 316(a) and capital gains and losses in § 316(b), the statute concludes:

(c) *Business income.*—The remaining net income, hereinafter referred to as business income, shall be allocated to this State if the trade or business of the corporation is carried on wholly within this State, but if the trade or business of the corporation is carried on partly within and partly without this State so much of the business income of the corporation as is derived from or reasonably attributable to the trade or business of the corporation carried on within this State, shall be allocated to this State and any balance of the business income shall be allocated outside this State. The portion of the business income derived from or reasonably attributable to the trade or business carried on within this State may be determined by a separate accounting where practicable, but never in the case of a unitary business; however, where separate accounting is neither allowable nor practicable the portion of the business income of the corporation allowable to this State shall be determined in accordance with a three-

---

**2.** This statute was amended effective July 1, 1982, but the amendments are not relevant to the issues raised in this appeal.

factor formula of property, payroll and sales, in which each factor shall be given equal weight and in which the property factor shall include rented as well as owned property and tangible personal property having a permanent situs within this State and used in the trade or business shall be included as well as real property.[3]

The proper use of the three-factor formula, and the Comptroller's authority to modify that formula, are at the heart of this appeal.

For the tax year ending May 31, 1979, Ward Europa concluded that it and its parent constituted a unitary business [4] and that therefore it was entitled to apportion its income under a three-factor formula of payroll, property, and sales. The actual composition of the formula is controlled by Md.Admin.Code tit. 03.04.01.03 § E (1978). When Ward Europa calculated its apportionment factor, however, it inadvertently used the formula provided in COMAR 03.-04.01.03 § E as it existed prior to amendment in 1978. Under the regulations in effect before 1978, a subsidiary obtaining the benefit of its parents' employees, which Ward Europa did, having no employees of its own, had to account for that in the formula. Similarly, the old formula provided that the sales factor was to be determined by sales that were *negotiated* in Maryland, not merely sales "in this State." Using the old formula, Ward Europa calculated

---

**3.** Section 316 was amended, effective July 1, 1984, deleting subsections (a) and (b) and the designation of subsection (c). The amendment substituted "all net income" for "the remaining net income, hereinafter referred to as business income," at the beginning of the section and substituted "net income" for "business income" throughout the section. The amendments were intended to clarify the statute.

**4.** The Maryland Tax Court ruled in *B & D (DISC), Inc. v. Comptroller of the Treasury*, M.T.C. Inc. Tax Nos. 999 and 1337 (1983), that a DISC and its parent constitute a unitary business. That determination has not been challenged in this ·appeal. For a discussion of unitary businesses, see *Comptroller v. Atlantic Supply Company*, 294 Md. 213, 448 A.2d 955 (1982), and *Comptroller v. Ramsay, Scarlett & Company, Inc.*, 58 Md.App. 327, 473 A.2d 469 (1984), *rev'd* 302 Md. 825, 490 A.2d 1296 (1985).

**340**

that it owed $40,243 in taxes, which it paid to the Comptroller.

In fact, the regulations on which Ward Europa had relied were substantially changed in 1978 to read as follows:

.03  *Allocation of Corporate Income*

The net income of every domestic and foreign corporation ... shall be allocated in the following manner:

. . . .

E.  When separate accounting is neither allowable nor practicable, the portion of the business income of the corporation allocable to this State shall be determined as follows:

(1) Corporations engaged in "manufacturing" and "selling" tangible personal property producing business income allocable under these regulations shall allocate to this State the percentage of the business income as shall be determined in accordance with a three factor formula of property, payroll, and sales in which each factor shall be given equal weight and in which the property factor shall include rented as well as owned property, this rented and owned property to include tangible personal property having a permanent situs within this State and used in the trade or business, real property owned, rented or leased and used in the trade or business carried on within this State, but may not include, however, property rented or leased for the storage of tangible personal property or property, real or personal, held solely for the production of non-business income.

(2) Of the amount of business income derived from the manufacture or sale of tangible personal property, there shall be allocated to this State such percentage of the business income as the average value of the property referred to in § E(1) above, and business within this State and payroll within this State bears to the average value of the total property referred to in § E(1) above and total business and total payroll; the percentage of property

referred to in § E(1) of business and payroll to be separately determined and the three percentages averaged.

. . . .

(5) *Payroll Factor.* The payroll factor is a fraction, the numerator of which is the total amount paid in this State during the tax period by the taxpayer for compensation and the denominator of which is the total compensation paid everywhere during the tax period. Compensation is paid in this State if:

(a) The individual's service is performed entirely within this State;

(b) The individual's service is performed both within and outside this State, but the service performed outside this State is incidental to the individual's service within this State; or

(c) Some part of the service is performed in this State and

(i) The base of operations or, if there is no base of operations, the place from which the service is directed or controlled is in this State, or

(ii) The base of operations or the place from which the service is directed or controlled is not in any state in which some part of the service is performed, but the individual's residence is in this State.

(6) *Sales Factor.*

(a) The sales factor is a fraction, the numerator of which is the total sales of the taxpayer in this State during the tax period, and the denominator of which is the total sales of the taxpayer everywhere during the tax period.

(b) Sales of tangible personal property are in this State if the property is delivered or shipped to a purchaser within this State regardless of the f.o.b. point or other conditions of the sale.

This formidable language can be more simply stated:

Maryland income = Property factor plus payroll factor plus sales factor divided by three.

Property factor = Value of Maryland property divided by value of all property everywhere.

Payroll factor = Taxpayer's Maryland payroll divided by taxpayer's entire payroll everywhere.

Sales factor = Sales by taxpayer within Maryland divided by total sales by taxpayer everywhere.

Upon discovering that it had used the outdated formula, Ward Europa re-calculated its apportionment factor, arriving at zero as the solution to the equation. It reasoned that it owned no property at all, either within Maryland or without; that it employed nobody anywhere; and that all of its sales were outside of Maryland. The property, payroll, and sales factors were thus equal to zero; zero divided by any number equals zero; therefore it owed no tax in Maryland at all.[5] Armed with this new apportionment factor, Ward Europa applied for and received a refund of all the tax it had paid earlier.

The Comptroller then rethought his position. After granting Ward Europa a refund, he assessed a deficiency against it on the basis that DISCs were not allowed to use any apportionment formula but must pay tax on all their income. Ward Europa appealed to the Maryland Tax Court, which heard testimony on October 27, 1981. Thereafter, the parties clung fast to their positions, Ward Europa using a zero apportionment factor and paying no taxes for 1979–82, Ward Overseas doing the same for 1982, and the Comptroller assessing a deficiency each time. The appellants appealed each deficiency assessment, and the Maryland Tax Court consolidated the cases for one hearing in January of 1984.

---

5. Appellants have failed to take into account that under their theory the fractional equations for both the property and payroll factors would be zero divided by zero. Theoretically, zero divided by any finite number is zero; a finite number divided by zero is infinity; and any finite number divided by itself is one. Zero divided by zero, however, is undefineable—it is compatible with any number the Comptroller might wish to assign it.

On September 2, 1983, the Tax Court rendered two memorandum decisions relevant to this case. The first was *B & D (DISC), Inc. v. Comptroller of the Treasury*, M.T.C. Inc. Tax Nos. 999, 1337. There the court ruled that a DISC and its parent operate as a unitary business and, therefore, if the parent engages in interstate commerce and apportions its income to Maryland the DISC is also entitled to apportionment. Relying on that reasoning the court also considered *Ward Europa, Inc. v. Comptroller of the Treasury*, M.T.C. Inc. Tax No. 1372 (1983), Ward Europa's initial appeal, and remanded the case to the Comptroller with instructions to permit Ward Europa to apportion its income. The court also said: "We note that Article 81, Section 316(c), gives the Comptroller discretion to fashion a special formula where circumstances so warrant. This may be such a case."

The Comptroller apparently concluded that this was "such a case" for he revised the formula so that the payroll and property factors used by the parent were included in the formulas used by Ward Overseas and Ward Europa. Since each DISC's income was solely earned either by direct sales or through commissions on sales to foreign countries, the Comptroller allowed appellants to use a sales factor of zero. The sales factor of the parent was then adjusted to include as Maryland sales those sales made by the parent to Ward Europa and those sales by the parent to foreign purchasers on which a commission was paid to Ward Overseas. Based on the new formula, the Comptroller assessed new deficiencies against Ward Europa for its tax years ending May 31 of 1979 through 1982 and against Ward Overseas for its tax year ending June 30, 1982.

On September 24, 1984, the Maryland Tax Court affirmed each of the new deficiencies reached through the revised formula. The Circuit Court for Baltimore County affirmed the decision of the Tax Court on March 26, 1985, and this appeal was taken from that ruling.

## Disposition

Although appellants have posed several questions to this court, there is only one issue, namely, whether the Comptroller of the Treasury has the authority to revise the three-factor formula as he did. We believe the answer lies in the interpretation of the last sentence of § 316 of article 81. That sentence reads:

> The Comptroller of the Treasury shall have the right, in those cases where circumstances warrant, to alter any of the above rules as to the use of the separate accounting method or the formula method, the weight to be given the various factors in the formula, the manner of valuation of rented property included in the property factor and the determination of the extent to which tangible personal property is permanently located within the State.[6]

Appellants argue that the Comptroller's power to revise is limited to those things explicitly discussed. They further contend that they calculated their apportionment factors in accordance with Maryland law.

Unquestionably, appellants did calculate their apportionment factors in accordance with the law as it existed. Yet the statutes and regulations as they existed did not contemplate DISCs; therefore, applying those rules to DISCs produced an absurd result. We do not believe that the legislature intended as bizarre a creature as a DISC to escape all tax liability in this State, and we shall not interpret the statute in question to produce such a result.

In three recent cases the Court of Appeals reiterated and clarified the rules of statutory interpretation. In *Jones v. State* the Court said, "We have declared in myriad decisions that the cardinal rule of statutory construction is to ascertain and effectuate the real intent of the legislature." 304 Md. 216, 220, 498 A.2d 622 (1985). In *Erwin & Shafer, Inc. v. Pabst Brewing Company, Inc.* the Court ruled that "[a] court must shun a construction of a statute which will lead

---

**6.** This language was not changed by the 1984 amendments.

to absurd consequences." 304 Md. 302, 311, 498 A.2d 1188 (1985). The Court continued this theme in *Blandon v. State,* concluding that "we should reject a proposed statutory interpretation if its consequences are inconsistent with common sense." 304 Md. 316, 319, 498 A.2d 1195 (1985).

We have no doubt that the purpose of § 316 is to provide a scheme of taxation which is fair to both the corporate taxpayer and the State. We note again that the legislature has already declared in § 280A that the income involved here is taxable. To make the taxation of this income fair, the statute permits the use of the three-factor formula and then affords the Comptroller the power to modify the formula where circumstances warrant. The Comptroller himself designed the specific formula which appears in Md.Admin.Code tit. 03.04.01.03. To interpret § 316 to mean that the Comptroller cannot redesign the specific formula to account for the peculiar problems presented by DISCs is absurd. To adopt appellants' argument would be to say that the three-factor formula which the legislature created to ensure that the proper amount of tax is paid cannot be altered to meet a situation in which the formula would produce no tax at all on income earned in Maryland. This was clearly not the intent of the legislature. Appellants' interpretation of § 316 is inconsistent with common sense, and we reject it.

Appellants point out that the three factors as defined in COMAR 03.04.01.03 explicitly concern the property, payroll, and sales of the *taxpayer.* Considering the property and payroll of the parent, they conclude, is thus improper. We note simply that the specific language in these regulations is the Comptroller's, not the legislature's. The Comptroller is certainly free to change his own regulations in any manner consistent with the law. See *Xerox Corporation v. Comptroller,* 290 Md. 126, 146, 428 A.2d 1208 (1981), where the Court said that modification of the formula is within the Comptroller's discretion.

Holding that the Comptroller does have the authority to modify the formula as he did, we further see no reason why he could not utilize the property and payroll factors of the parent corporation in his computations. The DISCs owned no property of their own and employed no personnel of their own; they would not even have existed were it not for the impetus provided by the IRC. The inclusion of the parent's property and payroll factors in appellants' formula is not only not inconsistent with the statutory scheme, it accurately accounts for taxable income earned by virtue of resources located in Maryland. Given that the intent of the statute is to account fairly and accurately for income attributable to Maryland and that authority was granted to the Comptroller to effectuate that end, we see no impropriety in the Comptroller's modification of the factors in the formula.[7]

---

7. Both the appellants and the Comptroller have relied on the case of *Comptroller v. Atlantic Supply Company*, 294 Md. 213, 448 A.2d 955 (1982), to support their propositions. We find that *Atlantic Supply* has no specific applicability to the issues presented in this case. Atlantic Supply was a wholly owned subsidiary of The Macke Company. Macke's primary business was the retail sale of food and beverages through vending machines located on commercial and industrial premises. As a retailer, Macke was not eligible for a discount offered by The Coca-Cola Company to wholesale purchasers. Macke created Atlantic Supply solely to take advantage of Coca-Cola's discount; Atlantic Supply purchased products from Coca-Cola at a discount which were then sold at wholesale, but minus the discount, to Macke's distributing subsidiaries in other states. Atlantic Supply's profits were thus the difference between what it paid to Coca-Cola for the products and the price at which the other subsidiaries purchased from Atlantic Supply. Atlantic Supply was no more than a post office box; it had no property and employed no personnel of its own. When products were ordered from Coca-Cola, a Macke employee would insert Atlantic Supply's name on a Macke purchase order in a blank left for "ordered by."

The Comptroller argued that Atlantic Supply could not apportion its income at all and must pay Maryland tax on 100 percent of that income. The Court of Appeals disagreed, holding that Atlantic Supply could apportion its income. In so concluding, the Court reasoned that Macke's employees were acting as agents for Atlantic Supply, as were those employees at Macke subsidiaries in other states. The Court concluded that these agents were conducting business for Atlantic Supply outside of Maryland and therefore Atlantic Supply should

Appellants finally contend that the Comptroller's revision of the formula amounted to the retroactive imposition of a tax. As we have pointed out several times, the income involved here is taxable already, and was always taxable, by virtue of § 280A, which defines Maryland taxable income in terms of what the IRC treats as taxable. The IRC treated all DISC income as taxable; it is the fact that tax was *deferred* on some of the income that was the salient feature of the DISC provisions. Section 316 and COMAR 03.04.01.-03 merely describe what percentage of this taxable income shall be allocated to and taxed by this State. Adjusting or modifying the formulas does not amount to the retroactive imposition of a tax because *all* of the income encompassed by the formulas is taxable within constitutional limits.

It is well established that the entire net income of a corporation, generated by interstate as well as intrastate activities, may, within constitutional limits, be fairly apportioned among the states for tax purposes by formulas utilizing in-state aspects of interstate affairs. *Mobil Oil Corp. v. Commissioner of Taxes*, 445 U.S. 425, 100 S.Ct. 1223, 63 L.Ed.2d 510 (1980); *Northwestern States Portland Cement Co. v. Minnesota*, 358 U.S. 450, 79 S.Ct. 357, 3 L.Ed.2d 421 (1959).

*Xerox Corp. v. Comptroller*, 290 Md. 126, 128, 428 A.2d 1208 (1981). The formula utilized by the Comptroller in this case is neither unfair nor unreasonable.

We hold that the Comptroller had the authority to revise the formula and that the specific revision was not inconsist-

---

be able to allocate income from business conducted by those agents to states other than Maryland.

While we find *Atlantic Supply* inapposite here, we note that the Comptroller's actions in the instant case were not inconsistent with the underlying reasoning of *Atlantic Supply*. If the Comptroller there was required to consider the activities of the taxpayer's parent and siblings under agency principles, it is not inconsistent for the Comptroller to consider the parent's resources in this case to determine properly how those resources were used by the DISC to generate income in Maryland.

ent with case law or statute. We therefore affirm the ruling of the Circuit Court for Baltimore County.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANTS.