572 A.2d 562

**COMPTROLLER OF THE TREASURY**

v.

**ARMCO EXPORT SALES CORPORATION, et al.**

**No. 1145, Sept. Term, 1989.**

Court of Special Appeals of Maryland.

May 1, 1990.

**430**

John K. Barry, Asst. Atty. Gen., Annapolis (J. Joseph Curran, Atty. Gen., Baltimore, and Gerald Langbaum, Asst. Atty. Gen., Annapolis, on the brief), for appellant.

Harry D. Shapiro (Robert A. Spar and Weinberg and Green, on the brief), Baltimore, for appellees.

Argued before MOYLAN and ROBERT M. BELL, JJ., and JAMES S. GETTY, Judge of the Court of Special Appeals (retired, Specially Assigned).

JAMES· S. GETTY, Judge, Specially Assigned.

The Comptroller of the Treasury has filed this appeal from an order of the Circuit Court for Baltimore City affirming a decision of the Maryland Tax Court relating to income tax assessments against three separate corporations. The Tax Court reversed assessments for the years 1981 through 1985 against Armco Export Sales Corp. (Armco); General Motors Export Corp. (GM); and Thiokol International, Inc. (Thiokol).

The issues presented are whether the three corporations are required to pay Maryland corporate income taxes and, if so, whether limitations bars the assessments for 1981 through 1983?

Each of the corporations is a Domestic International Sales Corporation, or DISC, which is a phantom book entry corporation created under the federal tax laws as a device to encourage exports through an exemption from otherwise taxable profits. By definition, a sales DISC (I.R.C., sec.

992(a)(1)(A)), earns income because it buys goods from its parent company and then resells the goods to an actual overseas customer; a commission DISC earns its income by a contractual agreement with its parent company giving it a percentage of each qualifying export sale made by the parent (I.R.C., sec. 992(a)(1)(C)). In either case, no activity is performed by the DISC to earn the income.

DISC income is taxable income, but if the DISC transactions meet the tests of I.R.C., secs. 991–997, a DISC pays no federal taxes. Instead, a percentage of its income is imputed to the parent company as a constructive taxable dividend; the balance is taxable to the parent when it is actually distributed as a dividend. In short, DISC's are an approved device designed to defer paying the full amount of tax due when the income is received. This artificial accounting between related corporations is an exception to the general rule, I.R.C. sec. 482, requiring transactions between parent and subsidiary corporations to be arms length dealing.[1]

The following facts are applicable to each of the three corporations involved herein.

Each is a DISC; none of the three has ever filed a Maryland corporation income tax return or paid corporate income taxes in this state; each is a wholly owned subsidiary of a multinational parent doing business in Maryland and filing a Maryland corporate tax return; each parent is a unitary business with a unitary relationship with its DISC; in all of the tax years at issue (except January, 1981 and January, 1982 for Thiokol) each parent produced goods in this state that were exported outside the United States, generating taxable income for the DISC which, except for the DISC, would have accrued to the parent; none of the

---

1. The 1984 Tax Reform Act substantially altered DISC's. They were replaced by "Foreign Sales Corporations" which are to be, unlike DISC's, real operating corporations. The change, however, has no bearing on this case, due to its effective date being after December 31, 1984.

DISC's had any tangible assets or employees anywhere; each DISC functioned solely as a bookkeeping entity recording profits from foreign sales by its parent; no DISC or parent was incorporated in Maryland and none of the parent companies had its headquarters in Maryland.

GM has an automobile assembly plant in Baltimore. During the tax years in issue, export sales of goods manufactured in Maryland ranged from $39,000,000 to $138,785,000. The accounting and bookkeeping functions for the DISC were performed by headquarters personnel in Detroit, Michigan.

Thiokol is in the rocket and chemical business and has a rocket engine facility in Elkton, Maryland. The DISC's books and records were kept in Marshall, Texas, and sales data would be delivered there by letter or telephone from the parent company.

Armco has steel production facilities in Maryland. Its accounting procedures were handled by its various divisional branches. Armco's Maryland tax returns disclosed the amount of dividends from the DISC to the parent, but not the taxable income of the DISC.

On these facts, the Comptroller asserts that taxation is required by state law and is necessary to reflect the economic reality of DISC transactions. The Tax Court reversed the assessments, reasoning that the Comptroller had failed to establish any nexus between Maryland and the three DISC's. The Comptroller's response to the Tax Court holding is that a DISC is doing business in Maryland within the meaning of Article 81, sec. 316, and the nexus is established by the parent of the phantom corporation engaged in the export business in the state.

The law relied upon by the Comptroller for imposition of the tax is Article 81, sec. 288(b) and (c), which imposes a tax on any corporation having income allocable to Maryland under the provisions of sec. 316. The latter section allocates income between Maryland and other states by use of an apportionment formula. The factors employed in the

allocation are not relevant to the issues herein. The Comptroller finds further authority for taxing the DISC income in *Xerox v. Comptroller,* 290 Md. 126, 142, 428 A.2d 1208 (1981), which defined the reach of sec. 316 as extending as far as the constitution permits. Thus, the Comptroller claims, if the constitution permits a tax, Maryland imposes it. *See also NCR Corp. v. Comptroller,* 313 Md. 118, 544 A.2d 764 (1988).

The Comptroller also cites two recent decisions of this Court involving DISC's, *Ward Europa Inc., v. Comptroller,* 66 Md.App. 332, 503 A.2d 1371 (1986), and *Comptroller v. Armco, Inc.,* 70 Md.App. 403, 521 A.2d 785 (1987). In *Ward,* this Court (Bloom, J.) allowed a modification of the formula in calculating the tax due from a DISC. Expressing legislative intent, Judge Bloom said:

> We do not believe that the legislature intended as bizarre a creature as a DISC to escape all tax liability in this State, and we shall not interpret the statute in question to produce such a result.

66 Md.App. at 344, 503 A.2d 1371.

In *Armco,* we said (Pollitt, J.) in footnote 11:

> Armco did not actually endure a double tax, because its DISC paid no corporate income tax.... There would have been no constitutional bar to taxing Armco's DISC, however, as all DISC's face the same tax consequences regardless of how much of their income is subject to Maryland tax.

70 Md.App. at 413, 521 A.2d 785.

We agree that the DISC in *Ward* was subject to tax, but a significant difference between Ward and the three DISC's involved herein lies in the fact that Ward's only place of business was located in Maryland, and whatever activity was performed by the DISC occurred here. In the present case, none of the DISC's performed any services or transacted any business in Maryland.

The question then arises, do we construe the footnote in *Armco* as establishing that every DISC whose parent con-

ducts business in Maryland is subject to taxation? The issue of taxing Armco's DISC was not before the Court and the holding of the case was that sec. 280A(c)(7) of Code Article 81 is unconstitutional because it discriminated against parent corporations who conduct less than 50% of their business here by denying them the same tax exclusion granted corporations doing more than 50% of their business in Maryland.

We said, in *Armco,* that until 1978 the Maryland tax scheme did not contain any special provision for DISC's. Without legislation clarifying the status of DISC's, the possibility, if not the probability, of double taxation was readily apparent. The state could tax the DISC's allocable income when it was in the "hands" of the DISC and then tax the allocable "deemed distributed income" a second time when the income was, by a bookkeeping entry, transferred to the parent.

The General Assembly attempted to remedy the problem by repealing and re-enacting Art. 81, sec. 280A(c), in 1978. The title to the Act states that its purpose is to

tax dividends received by a Maryland corporation from the earnings of an affiliated subsidiary domestic international sales corporation (DISC) to the same extent as dividends received by Maryland corporations from any other affiliated corporation.

As amended, the first sentence of sec. 280A(c)(7) provides:

(c) There shall be subtracted from taxable income of the taxpayer the following items to the extent included in federal income.... (7) to the extent that the dividends are included in taxable income, the percentage of dividends received from an affiliated domestic international sales corporation (DISC) as defined by Internal Revenue Code of 1954 sec. 992(a) which is equivalent to the percentage that would be excluded if the domestic international sales corporation was not qualified under sec. 992(a).

What the Legislature is saying with all of the above is that since the income is taxable to the DISC, the parent is entitled to exclude the income from its return. Art. 81, sec. 280A(c)(7), therefore, clearly expresses a legislative intent to tax income received by a DISC. We found unconstitutional that part of sec. 7 that granted the exception to only those corporations doing 50% or more of their business in Maryland. The challenged portion, however, does not in any manner intrude upon the legislative intent.

## Nexus

■ The Fourteenth Amendment to the United States Constitution prohibits a state from imposing a tax on an entity in the absence of some connection or nexus with the taxing state. If nexus is established, a state may apply a fairly apportioned tax against the unitary income of an affiliate member of a corporate group where a part of the unitary business is conducted by such affiliate within the state. *See Mobil Oil Corp. v. Comm. of Taxes*, 445 U.S. 425, 100 S.Ct. 1223, 63 L.Ed.2d 510 (1980); *NCR v. Comptroller*, 313 Md. 118, 544 A.2d 764 (1988); *Xerox Corp. v. Comptroller*, 290 Md. 126, 428 A.2d 1208 (1981). In *NCR*, *supra*, at 132, 544 A.2d 764, Judge Adkins said:

> The minimal connection necessary to establish nexus "is satisfied by demonstrating the existence of unitary business, part of which is carried on in the taxing state."

■ The DISC's herein persuaded the Tax Court that nexus to tax DISC's must come from Maryland property, payroll, or sales by the DISC itself. We think that reasoning is flawed due to the very nature of a DISC, which has no tangible property or employees and can only conduct its activity and do business through branches of its unitary affiliated parent. Adopting the DISC view would lead to one of two atypical results: (1) that a DISC is subject to tax in the state of a parent company's headquarters or incorporation, or (2) that a DISC may not be taxed anywhere, because it has no property or payroll in any jurisdiction.

We note that in *Mobil Oil Corp. v. Comm. of Texas*, 445 U.S. 425, 100 S.Ct. 1223, 63 L.Ed.2d 510 (1980), the Supreme Court stated that "headquarters only" taxation was constitutionally suspect and, even if it could be accomplished, its allowance did not forbid a fairly apportioned tax against the same income by another state. We think the holding in *Comptroller v. Atlantic Supply Co.*, 294 Md. 213, 448 A.2d 955 (1982), is also relevant to the nexus issue. Atlantic had no employees or property of its own, but conducted its business through contracts with related unitary corporate affiliates in other states. It purchased Coca Cola at a discount and resold it to its parent's distributing affiliates. The Comptroller sought to have all of its income subject to Maryland taxation, because in the absence of non-Maryland offices, employees, or property, it was not doing business elsewhere. The Court of Appeals rejected this argument, holding that Atlantic was engaged in business in other states through its corporate affiliates in a unitary business. Thus, the Court rejected a "headquarters" limited interpretation of "carrying on a trade or business" and relied upon a transactional analysis of the business being conducted.

The three key elements necessary for constitutional nexus were affirmatively established in each of these three DISC cases. They are:

1. The parent is engaged in business in Maryland.
2. The parent is unitary with the DISC.
3. The apportionment formula is fair.

Activity directly connected to the DISC's took place in Maryland in that the goods produced here and sold overseas generated the DISC income. That activity included assembly of vehicles by GM, production of rocket motors by Thiokol, and steel fabrication by Armco.

Interestingly, the three DISC corporations herein distinguish *Ward*, which authorized a tax on DISC income, because the DISC conducted all of its business through its parent in Maryland. Ward's DISC, however, is no different than any other; it has no property, employees, or payroll.

Whatever action is taken is no more than a bookkeeping entry somewhere by, or at the direction of, someone in the parent organization.

The legislative intent to tax DISC's is clearly expressed in art. 81, sec. 280A(c)(7); *Ward* upheld the taxation of a DISC; *Atlantic Supply* granted a benefit to the parent that was conditioned upon the DISC being taxed in this state. The Tax Court and the trial court refused to follow the legislative direction and precedent which in our view is an error of law. Carrying on a trade or business under art. 81, sec. 316, must be construed broadly enough to carry out the legislative intent to tax DISC's. Nexus, therefore, cannot be found wanting for lack of employees or property where, as here, business is conducted in this state on behalf of the phantom corporation by its unitary corporate affiliates.

## *Limitations*

Article 81, sec. 295, requires that every corporation having income allocable to this state under the provisions of sec. 316 shall file a return showing gross income and deductions claimed. None of the DISC's herein filed a return for the years 1981 through 1985. The limitations issue was raised in the Tax Court, but not resolved. The trial court ruled that the limitations defense was available to the DISC's. The court affirmed the Tax Court decision that no nexus was established, hence no tax was owed. We shall address the issue which, unanswered, may spawn another appeal. Md.Rule 8–131; *State Dept. of Assessments and Taxation v. Clark,* 281 Md. 385, 380 A.2d 28 (1977).

The auditing of returns and assessment of tax imposed shall be within three years after the filing of a return, according to art. 81, sec. 309. The period of limitations does not apply, however, in the following situations:

§ 309(c)(1) In the case of a false or fraudulent return with the intent to evade tax ..., or

§ 309(c)(2) In the case of a failure to file a return or in the case of filing of an incomplete return, the tax may be assessed at any time.

■ The DISC's contend that limitations should begin to run with the filing of Maryland returns by their respective parents, because each Maryland return filed by the parent included a federal corporation return which included a Schedule C indicating deemed dividends received by the parent from the DISC. We construe this argument to be that once the government is put on notice of potential liability, limitations begin to run. We have not been provided with any case supporting this concept, neither are we aware of any such authority. The practical difficulty facing taxing authorities in collecting taxes under such a notice is reason enough for its rejection. Every corporation, pursuant to sec. 295, is required to file a return. That includes phantom corporations. Under sec. 309(c)(2), limitations did not run because the DISC's filed no returns.

JUDGMENT REVERSED. REMANDED TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.

COSTS TO BE PAID BY APPELLEES.